# Federal Defenders
## OF NEW YORK, INC.

Eastern District
One Pierrepont Plaza, 16th Fl., Brooklyn, NY
11201 Tel: (718) 330-1200 Fax: (718) 855-0760

Tamara L. Giwa
*Executive Director and
Attorney-in-Chief*

Michelle A. Gelernt
*Attorney-in-Charge*

May 22, 2026

**By ECF and Email**
The Honorable William F. Kuntz, II
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re:   United States v. Michael Jafferakos, 25-CR-332 (WFK)

Dear Judge Kuntz:

I write on behalf of Michael Jafferakos. For the reasons set forth below, Mr. Jafferakos respectfully requests that he be released on a personal appearance bond, with stringent conditions and co-signed by his closest family members.

Mr. Jafferakos seeks bail for one reason and one reason only: to care for his mother while she recovers from a serious medical procedure. Marie Jafferakos is scheduled to undergo ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ She is hopeful that Michael can provide care and support for her in the family home in the coming months. The other family members, including Michael's father, work full time and cannot provide the support that she needs. Michael would remain on home incarceration at their home until the conclusion of the case.

This is Mr. Jafferakos' second application for bond, following an initial application made at presentment on September 25, 2025 before Magistrate Judge Seth D. Eichenholtz.

## I.   PROPOSED BOND

Mr. Jafferakos requests that the Court release him on a substantial bond, co-signed by Mr. Jafferakos's mother and father. Mr. Jafferakos would live with his parents at their residence in Brooklyn. The proposed sureties are as follows:[1]

---

[1] The surety information is redacted in the public filing because it includes personally identifiable information. This information is "traditionally considered private rather than public" and has no public ramifications. *See United States v. Amodeo*, 71 F.3d 1044, 1049–51 (2d Cir. 1995) (ruling that

1)

2)

The two sureties are also prepared to put up the family home as collateral.

The Court could also designate Mr. Jafferakos' parents as third party custodians, which would legally obligate them to assume supervision of Mr. Jafferakos and report any violations of a release condition to the Court. *See* 18 U.S.C. § 3142(c)(B)(i).

Along with the standard conditions, and the mandatory Adam Walsh Child Protection and Safety Act conditions, Mr. Jafferakos agrees to abide by certain special conditions to alleviate any concerns Pretrial Services and the Court may have regarding danger to the community. The two suretors are familiar with these special conditions. Specifically, Mr. Jafferakos should be released with the following additional conditions:

1. Report to Pretrial Services as directed;
2. Maintain a residence at his wife's address;
3. Submit to GPS location monitoring;
4. Submit to home incarceration;
5. The defendant may not possess a firearm or any other instrument or materials designed to be used as a lethal weapon;
6. The defendant shall not attempt to acquire a passport or any other travel document;
7. The defendant will be subject to random home and community contacts by Pretrial Services; and,
8. The defendant must undergo mental health evaluation and/or treatment as directed by Pretrial Services.

If there are any other conditions that the Court deems appropriate, Mr. Jafferakos is willing to abide by them.

Regarding Condition #8, Mr. Jafferakos could receive mental health treatment at New York Counseling for Change (formerly Queens Counseling for Change), which offers treatment for people with sex offense charges and convictions. It is highly regarded by clinicians as the preeminent site for evidence-based sex offense-specific treatment. NYCFC offers group therapy, individual counseling, and psychiatry services including medication administration.

---

information may be sealed where its value to the public is outweighed by the privacy interests of the party seeking the sealing order).

If Mr. Jafferakos is released from custody, Federal Defenders social work staff would facilitate a referral to the program. Mr. Jafferakos would attend up to three intake sessions before regularly meeting with a designated clinician. The program would decide Mr. Jafferakos's appropriate treatment regimen based on their intake assessment. Federal Defenders social work staff has identified no reason Mr. Jafferakos would be found ineligible for NYCFC treatment. Should that happen, staff would make a referral to another appropriate provider.

Because these proposed conditions are sufficient to reasonably assure the safety of the community and Mr. Jafferakos's appearance in Court, he respectfully requests that the court order his release in accordance with this bail package.

## II.   BAIL REFORM ACT

As the Supreme Court held in *Salerno*, "In our society liberty is the norm, and detention prior to trial . . . is the carefully limited exception." 481 U.S. 739, 755 (1987). This presumption of release is encapsulated in the Bail Reform Act. *See* 18 U.S.C. § 3142. The legal principles are familiar.  The Court "shall order" release except in certain narrow circumstances where the Court finds that "no condition or combination of conditions would *reasonably assure* the appearance of the person as required and the safety of any other person and the community." *Compare* 18 U.S.C. § 3142(c) *with* § 3142(e). Under this statutory scheme, "it is only a 'limited group of offenders' who should be detained pending trial." *United States v. Shakur*, 817 F.2d 189, 195 (2d Cir. 1987) (quoting S. Rep. No. 98-225, at 7 (1983), *as reprinted in* 1984 U.S.C.C.A.N. 3182, 3189); *see also United States v. Byrd*, 969 F.2d 106, 109 (5th Cir. 1992) ("There can be no doubt that this Act clearly favors nondetention.").

### A.  The Rebuttable Presumption

Here, the statutes charged in the indictment create a *rebuttable* presumption "that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." § 3142(e)(3). The presumption inquiry proceeds in two steps. At Step 1, the Court must consider whether the defense has met the very low burden of production to rebut the presumption. Mr. Jafferakos has clearly submitted sufficient evidence to rebut the presumption. At Step 2, the Court must consider the presumption alongside all of the other Section 3142(g) factors—even if the presumption has not been rebutted. Release is warranted in this case because there are facts under Section 3142(g) that both rebut the presumption of detention and demonstrate that there are conditions of release that will reasonably assure both Mr. Jafferakos's appearance in court and the safety of the community.

The Bail Reform Act imposes two checks on the presumption: (1) there is an easy-to-meet standard for rebutting the presumption and the prosecution always bears the burden of persuasion, and (2) the presumption alone does not warrant detention and must always be weighed along with other factors in § 3142(g).[2] Moreover, it is impermissible to detain a

---

[2] *See, e.g.*, Alison Siegler, *Freedom Denied: How the Culture of Detention Created a Federal Jailing Crisis* 151 (2022), https://freedomdenied.law.uchicago.edu/.

defendant in a presumption case based solely on the nature of the crime charged or the weight of the evidence.

To rebut the presumption, a defendant simply needs to produce "*some evidence* that he will not flee or endanger the community if released." *United States v. Dominguez*, 783 F.2d 702, 707 (7th Cir. 1986) (emphasis added); *see also United States v. Jessup*, 757 F.2d 378, 384 (1st Cir. 1985), *abrogated on other grounds by United States v. O'Brien*, 895 F.2d 810 (1st Cir. 1990) ("[T]o rebut the presumption, the defendant must produce some evidence."); *United States v. Gamble*, No. 20-3009, 2020 U.S. App. LEXIS 11558 at *1–2 (D.C. Cir. Apr. 10, 2020) (holding that "[t]he district court erred in concluding that appellant failed to meet his burden of production to rebut the statutory presumption" regarding dangerousness because "appellant did 'offer some credible evidence contrary to the statutory presumption,'" including information that he had a job offer) (unpublished) (quoting *United States v. Alatishe*, 768 F.2d 364, 371 (D.C. Cir. 1985)); *United States v. Wilks*, 15 F.4th 842, 846–47 (7th Cir. 2021) (explaining that the defense bears "a light burden of production" to rebut the presumption, "but the burden of persuasion always rests with the government"). Indeed, the presumption of detention is rebutted by "*[a]ny evidence* favorable to a defendant that comes within a category listed in § 3142(g) . . . including evidence of their marital, family and employment status, ties to and role in the community . . . and other types of evidence encompassed in § 3142(g)(3)." *Dominguez*, 783 F.2d at 707 (emphasis added); *Jessup*, 757 F.2d at 384.

## B. The Presumption Alone is Not Sufficient to Warrant Detention and Must be Weighed Along With the § 3142(g) Factors

Once the presumption is rebutted, the Court must weigh the presumption against all of the other evidence about the defendant's history and characteristics. "Once a defendant has met his burden of production . . . the presumption favoring detention does not disappear entirely, but remains a factor to be considered among those weighed by the district court. Even in a presumption case, the government retains the ultimate burden of persuasion by clear and convincing evidence that the defendant presents a danger to the community." *United States v. Mattis*, 963 F.3d 285, 290–91 (2d Cir. 2020)*; see also Jessup*, 757 F.2d at 384 (holding that the judge should consider the rebutted presumption along with the § 3142(g) factors). The Court should not give the presumption undue weight if evidence relating to other § 3142(g) factors supports release.

In evaluating which if any conditions should be imposed that are the least restrictive, the Court looks to the following factors:

(1) the nature and circumstances of the crime charged;

(2) the weight of the evidence against the defendant;

(3) the history and characteristics of the person, including--

      (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community,

community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

(B)whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and

(4) the nature and seriousness of the danger to the community or to an individual that would be posed by release.

18 U.S.C. § 3142(g).

### C.  Impermissible Considerations in a Presumption Case

A judge may not detain a defendant in a presumption case based solely on: (1) an unrebutted presumption alone, (2) evidence of the defendant's past dangerousness, (3) the nature and seriousness of the crime charged, or (4) the weight of the evidence of the person's guilt.

First, the defendant never bears the burden of persuasion—even if the presumption is unrebutted. It is not incumbent on the defendant to persuade the judge that there exist conditions of release that will reasonably assure the safety of the community. That burden of persuasion lies with the government, the standard of which is always clear and convincing evidence. *Wilks*, 15 F.4th at 846–47 ("[T]he burden of persuasion always rests with the government and an unrebutted presumption is not, by itself, an adequate reason to order detention.").

Second, even if the presumption is not rebutted, court are prohibited from detaining a defendant "based on evidence that he has been a danger in the past[.]" *Dominguez*, 783 F.2d at 707. Instead, past dangerous conduct is relevant only to the extent that the government can prove—by clear and convincing evidence—that the defendant is "likely to continue to engage in criminal conduct undeterred [ ] by . . . release conditions." *Id.* Even when a defendant is charged with a serious crime, there are often release conditions that will reasonably assure the safety of the community.

Third, to rebut the presumption of dangerousness, a defendant need not "demonstrate that narcotics trafficking [or another serious crime] is not dangerous to the community." *Id.* at 706. Instead, this Court must analyze the defendant's individual characteristics under § 3142(g).

Fourth, the Court is forbidden from relying solely on the weight of the evidence of guilt to detain a defendant in a presumption case. A defendant is not required to "'rebut' the government's showing of probable cause to believe that he is guilty of the crimes charged." *Id.* The likelihood of a conviction is analytically distinct from whether there are conditions of release that will reasonably assure the person's appearance or the safety of the community.

### III. MR. JAFFERAKOS MUST BE RELEASED BECAUSE THERE ARE CONDITIONS THAT WILL REASONABLY ASSURE APPEARANCE AND SAFETY

#### A. Any Risk of Danger Can Be Mitigated

Under the Bail Reform Act, the conditions of release do not need to guarantee, but rather "reasonably assure" the safety of the community. *See United States v. Tomero*, 169 F. App'x 639, 641 (2d Cir. 2006) (reiterating that 18 U.S.C. § 3142(e) requires "a reasonable assurance rather than a guarantee" of community safety); *see also United States v. Schwamborn*, No. 06-CR-0328, 2007 WL 9653331, at *8 (E.D.N.Y. June 29, 2007) ("[T]he Bail Reform Act requires a reasonable assurance, not a guarantee, of safety.").

To detain a defendant based on danger to the community, the government's proof must be clear and convincing. 18 U.S.C. § 3142(f)(2)(B). To find danger to the community under that standard of proof "requires that the evidence support such a conclusion with a high degree of certainty." *United States v. Chimurenga*, 760 F.2d 400, 405 (2d Cir. 1985). Even where there is a presumption of detention, "the government retains the ultimate burden of persuasion by clear and convincing evidence that the defendant presents a danger to the community." *See United States v. Mercedes*, 254 F.3d 433, 436 (2d Cir. 2001). If the government satisfies that burden, the court must still determine whether there are conditions that will reasonably assure the safety of the community if the defendant is released. *See United States v. Khashoggi*, 717 F. Supp. 1048, 1049 (S.D.N.Y. 1989); *see also United States v. Paulino*, 335 F. Supp. 3d 600, 603 (S.D.N.Y. 2018) ("[T]he government must prove . . . not only a defendant's potential danger to the community, but also that no conditions can reasonably assure the safety of any other person and the community.").

Here, Mr. Jafferakos is charged with two counts of sexual exploitation of a child, in violation of 18 U.S.C. § 2251(a). The government alleges that between August 2025 and September 2025, and between July 2024 and September 2024, Mr. Jafferakos created visual depictions of two 14-year-old boys engaged in sexually explicit conduct. The allegations are, without a doubt, serious. But that is not the analysis here. Even if Mr. Jafferakos was a danger prior to his arrest, the proposed conditions of release will ensure that he is not a current danger to anyone in the community.[3] In *United States v. Mattis*, the Second Circuit recently observed:

> The government's position that the district court committed clear error in granting bail essentially boils down to an argument that the charged criminal conduct is so extreme and aberrant that it represents the new normal for the defendants, such that no set of conditions could reasonably assure the safety of the community. The acts alleged were indisputably dangerous and may have posed a serious risk to individuals in the surrounding areas. As a threshold matter, however, we must observe that the entire system for determining bail is premised on the belief that, at least to some extent, all criminal acts are aberrant. The very reason that Congress directed district courts to consider factors beyond just the severity of the offense is the recognition that an individual is more than the crime of which that

---

[3] Mr. Jafferakos has no prior criminal history to counsel's knowledge.

individual has been accused.

*United States v. Mattis*, 963 F.3d 285, 293 (2d Cir. 2020). Ultimately, the government's claim that Mr. Jafferakos must be detained is based largely on the charges against him. Accepting the government's claim that the accusations in the indictment are alone sufficient to warrant detention would improperly require the detention of any defendant accused under 18 U.S.C. § 2251. *Cf. United States v. Cirillo*, 149 F. App'x 40, 43 (2d Cir. 2005) (noting that even for organized crime leaders, there is "no per se rule requiring . . . detention"). This is plainly at odds with the Bail Reform Act and current practice showing that even defendants accused of violent assaults and murder can be released on bail. *See, e.g.*, *Paulino*, 335 F. Supp. 3d 600 (ordering release of alleged gang member with criminal history accused of a participating in a violent assault where there was video of him assaulting the victim); *United States v. Messina*, 11-CR-031 (E.D.N.Y.) (KAM), Minute Entry Mar. 3, 2011 (affirming magistrate judge's order releasing alleged organized crime associate accused of murder, extortion, and racketeering); *United States v. Polito*, 02-CR-047 (E.D.N.Y.) (DGT), Dkt. 23 (ordering release of alleged organized crime associate charged with three counts of murder in aid of racketeering and facing the death penalty).

Reliance solely on the charged conduct simply cannot bear the weight the government assigns to it. Any risk of danger here can be mitigated with conditions. "Doubts whether [bail] should be granted or denied should always be resolved in favor of the defendant." *Herzog v. United States*, 75 S. Ct. 349, 351 (1955); *accord United States v. Williams*, No. 17-CR-78-FPG, 2018 WL 3633296, at *2 (W.D.N.Y. July 31, 2018).

### B.  There is No Risk of Flight

A finding of risk of flight must be supported by a preponderance of the evidence. *See United States v. Jackson*, 823 F.2d 4, 5 (2d Cir. 1987). Even if the Court finds that there's some risk, it can easily be mitigated by the proposed conditions.

Mr. Jafferakos has strong ties to the community. He is a lifelong resident of Brooklyn, and has lived in his family's home for much of his life. He also has extremely close ties to his parents, who also live in Brooklyn in the family home—the same home they're willing to put up as collateral, and the home in which Mr. Jafferakos would be on home incarceration.

 To mitigate any concerns the Court may have, Mr. Jafferakos' parents are willing to sign as third party custodians, ensuring that he abides by all conditions of release and attends future court appearances as scheduled.

### C.  Comparable Cases in the Eastern District of New York Support Release

Numerous defendants indicted on similar charges—including in person sexual abuse—have been released in the Eastern District of New York. The following cases are illustrative:

*United States v. Yu Sing Leung*, 22-CR-181 (CBA) (E.D.N.Y.)

Mr. Leung was charged with the production, receipt, and possession of child pornography, 18 U.S.C. §§ 2252(a)(2), 2252(b)(1), 2252(a)(4)(B). Mr. Leung was accused of sexually abusing his 3-year-old daughter, and recording the abuse. Additionally, Mr. Leung allegedly abused other minor victims, took countless voyeuristic photographs of children in playgrounds and other public spaces, and collected child pornography over a period spanning 13 years, amassing a database of more than 125,000 videos and images, many of which depicted infants and very young children. Mr. Leung was released on a $100,000 bond secured by his mother's house in Queens. His bail conditions included electronic monitoring and computer monitoring.

*United States v. Blaha*, 20-CR-220 (JMA) (E.D.N.Y.)

Mr. Blaha was charged with sexual exploitation of a child, 18 U.S.C. § 2251(a), attempted exploitation of a child, 18 U.S.C. § 2251(c), two counts of traveling with intent to engage in illicit sexual conduct, 18 U.S.C. § 2423(b), distribution of child pornography, 18 U.S.C. § 2252(a)(2), and possession of child pornography, 18 U.S.C. § 2252(a)(4)(B). Mr. Blaha repeatedly exploited a 13-year-old girl who lived in the Philippines by communicating with her via Facebook and asking her to send him sexually explicit videos and pictures. Mr. Blaha was charged with paying the girl's older sister for sexually explicit images and videos of the minor and travelling to the Philippines to sexually abuse the girl. Mr. Blaha also possessed about 700 images and 110 videos containing child pornography. He was granted release on a $1,000,000 bond, secured by three of Mr. Blaha's properties in Florida and another property in New York. Mr. Blaha was subject to home detention with location monitoring, and a computer monitoring condition.

*United States v. Maben*, 19-CR-237 (JMA) (E.D.N.Y.)

Mr. Maben was charged with sexual exploitation of a child, 18 U.S.C. § 2251(a), and coercion and enticement, 18 U.S.C. § 2422(b). ECF No. 9. The government alleged that he met up with a 16-year-old girl in Staten Island, took nude pictures of her genitals, recorded her performing oral sex, and then shared those pictures and videos via "Kik," a file sharing application. Mr. Maben was released on a $200,000 bond co-signed by two suretors. Conditions of release included home detention with electronic monitoring, and an internet monitoring condition.

*United States v. Noel*, 23-CR-320 (PKC) (E.D.N.Y.)

Mr. Noel was charged with attempted sexual exploitation of a child, 18 U.S.C. § 2251(e) based on allegations that he repeatedly contacted individuals he believed to be minors, asked them to provide him with sexually explicit images of themselves, and discussed meeting them in person. Mr. Noel was arrested after he went to a hotel believing he was going to meet up with a 13-year-old girl and brought "Plan B" emergency contraception pills, a vibrator, and a camera. The court released him on a $500,000 bond secured by the signature of his mother and brother, as well as his mother's property in Colorado. Mr. Noel was placed on home incarceration with

electronic monitoring, and was subject to a cyber monitoring condition.

*United States v. Cruz*, No. 23-CR-159 (NRM) (E.D.N.Y.)

Mr. Cruz was charged with nine counts of sexual exploitation of a child, 18 U.S.C. § 2251(a), and one count of possessing child pornography, 18 U.S.C. § 2252(a)(4)(B). The charges in Mr. Cruz's case stemmed from his chats with prepubescent females where he identified himself as a 12-year-old boy and requested the minors for sexually explicit pictures. Mr. Cruz was released on a $50,000 bond co-signed by two suretors. Conditions of release included electronic monitoring with a curfew, and a computer monitoring condition.

*United States v. Deutsch*, 18-CR-502 (FB) (E.D.N.Y.)

Mr. Deutsch was initially charged with five counts of sexual exploitation of a child, 18 U.S.C. § 2251(a). Mr. Deutsch, who was employed as a schoolteacher, contacted hundreds of minors through email, social networking sites, and mobile messaging applications, and groomed and manipulated these children into exchanging sexually graphic materials with him. Despite those allegations, the court granted release on a $100,000 bond secured by Mr. Deutsch's parents' home and. Conditions of release included location monitoring, and no use of internet-capable devices.

*United States v. Labianca*, 22-CR-206 (AMD) (E.D.N.Y.)

Mr. Labianca was charged with six counts of sexual exploitation of a child, 18 U.S.C. § 2251(a), and one count of distribution of child pornography, 18 U.S.C. § 2252(a)(2). Mr. Labianca was alleged to have communicated with girls between the ages of 13-17 via Skype and coerced them into taking sexually explicit videos and pictures of themselves. Mr. Labianca was released on a $200,000 bond co-signed by two suretors, with a $100,000 cash deposit. Mr. Labianca was placed on home detention with location monitoring, and computer monitoring conditions.

*United States v. Garrett*, 20-CR-561 (RPK) (E.D.N.Y.)

Mr. Garrett was charged with sexual exploitation of a child, 18 U.S.C. § 2251(a), and distribution of child pornography, 18 U.S.C. § 2252(a). It was alleged that Mr. Garrett contacted two minors online, chatted with them, and then requested they send him sexually explicit videos and images. Mr. Garrett knew both victims were underage, and he had discussed in person meetings, though no in-person contact ever took place. Mr. Garrett also shared a link containing child pornography in a group chat. He was released on a $100,000 bond co-signed by a single suretor. Conditions of release included home detention with electronic monitoring, and internet monitoring.

*United States v. Didier*, 20-CR-423 (JMA) (E.D.N.Y.)

Mr. Didier was charged with two counts of sexual exploitation of a child, 18 U.S.C. § 2251(a), receipt of child pornography, 18 U.S.C. § 2252(a)(2), and possession of child

pornography, 18 U.S.C. § 2252(a)(4)(B). The allegations in the case stemmed from Mr. Didier's contacts with minors on a website chat called OMEGLE. It was alleged that he chatted with underage victims and recorded video chats where these minors were nude and engaging in sexual activities. Mr. Didier was also alleged to have child pornography on his computer. The court granted release on a $150,000 bond co-signed by a single suretor. ECF No. 5. Mr. Didier was subject to home detention with location monitoring except for court appearances, attorney visits, medical appointments, religious services, or employment, as well as a computer monitoring condition.

The cases cited above illustrate that defendants in Mr. Jafferakos's position—or with even more aggravated conduct—have been granted release on bond subject to conditions on numerous occasions. Moreover, all of the above defendants remained on bail until the end of their cases.

### D. Conclusion

In sum, the proposed bail package, which includes a substantial bond co-signed by the two people closest to Mr. Jafferakos, the oversight of his parents as third-party custodians, and Mr. Jafferakos' promise to abide by additional special conditions, is sufficient to ensure both community safety and his appearance in court. Accordingly, we respectfully request that the Court grant Mr. Jafferakos' request to be released from custody under the proposed bail package, so that he can care for his mother at home during her recovery from surgery.

Respectfully Submitted,

_____/s/_____
Samuel Jacobson
Assistant Federal Defender

cc:    all counsel of record (by ECF)
       U.S. Pretrial Services (by Email)