

**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

MWG:MFS
F. #2025R00575

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

May 27, 2026

<u>By ECF and E-Mail</u>

The Honorable William F. Kuntz, II
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

> Re:    United States v. Michael Jafferakos
>        <u>Criminal Docket No. 25-332 (WFK)</u>

Dear Judge Kuntz:

The government respectfully submits this letter in opposition to the defendant's bond application, filed on May 22, 2026 ("Application" or "App."). In this case, the defendant is charged in a superseding indictment with two counts of sexual exploitation of a child, in violation of 18 U.S.C. § 2251(a). The charges arise from the defendant's solicitation and receipt of sexually explicit material from two minor victims, including one teenage boy from a youth basketball league for which the defendant was the commissioner. The defendant has been detained since September 25, 2025, after his arrest in connection with this matter. In his Application, the defendant proposes that he be released on "a personal appearance bond, with stringent conditions and co-signed by his closest family members." App. at 1. For the reasons set forth below, the defendant's Application should be denied because there is no condition or combination of conditions that would ensure the safety of the community and reasonably assure the defendant's appearance in court.

> I.    <u>Background</u>

The defendant was arrested on September 25, 2025, and he was charged by criminal complaint with sexual exploitation of a child, in violation of 18 U.S.C. § 2251(a). <u>See</u> ECF No. 1. That same day, the defendant appeared before the Honorable Seth D. Eichenholtz, United States Magistrate Judge, Eastern District of New York, who rejected the defendant's bond application and entered an order of detention pending trial. <u>See</u> ECF No. 2. Among other things, Judge Eichenholtz found that the government had shown by clear and convincing evidence that no condition or combinations of conditions of release would reasonable assure the safety of the community because the offense charged involved a minor victim, the weight of the evidence against the defendant was strong, the defendant was subject to a lengthy period of

incarceration if convicted, and the defendant's release posed a serious danger to the community. See id. at 3.

On October 22, 2025, the grand jury returned an indictment charging the defendant with one count of sexual exploitation of a child, in violation of 18 U.S.C. § 2251(a), relating to a minor victim, John Doe #1. On October 29, 2025, the grand jury returned a superseding indictment that charged the defendant with a second count of sexual exploitation of a child, in violation of 18 U.S.C. § 2251(a), relating to a minor victim, John Doe #2. The superseding indictment also charged Anthony Cina as a co-defendant in the first count of sexual exploitation of a child. The defendant has appeared before this Court twice for a status conference, and the next status conference is scheduled for May 28, 2026, at 12 p.m.

In his Application, the defendant explains that the "only" reason he is seeking release on bond is to care for his mother while she recovers from a serious medical procedure because other family members work full time and cannot provide the support that she needs. App. at 1. The defendant proposes that he be released on a "substantial" personal appearance bond, co-signed by the defendant's mother and father, who the defendant states are prepared to put up their family home as collateral. Id. at 1-2. The defendant also suggests that his parents could be designated as third party custodians obligated to supervise the defendant and report any violations of his release conditions. Id. at 2. The defendant further proposes that he be subject to certain additional conditions, including the "mandatory Adam Walsh Child Protection and Safety Act conditions," GPS location monitoring, home incarceration, and mental health treatment. Id.

II.      Legal Standard

Under the Bail Reform Act, 18 U.S.C. § 3141 et seq., federal courts are empowered to order a defendant's detention pending trial upon a determination that "no condition or combination of conditions would reasonably assure the appearance of the person as required and the safety of any other person and the community[.]" 18 U.S.C. § 3142(e). A rebuttable presumption of dangerousness and risk of flight arises when, as here, a defendant is charged with sexual exploitation of a child, in violation of 18 U.S.C. § 2251. See 18 U.S.C. § 3142(e)(3)(E). This means that the Court must presume there is "no condition or combination of conditions that will reasonably assure the appearance of the person as required and the safety of any other person and the community." Id.

To rebut this statutory presumption, the defendant must come "forward with evidence that he does not pose a danger to the community or a risk of flight." United States v. Mercedes, 254 F.3d 433, 436 (2d Cir. 2001) (per curiam). If this limited burden of production is satisfied, the government retains the burden of persuasion by clear and convincing evidence that the defendant presents a danger to the community and by a preponderance of evidence that the defendant presents a risk of flight. Id.

To determine whether the presumptions of dangerousness and flight are rebutted by a defendant, the Court must consider: (1) the nature and circumstances of the crime charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant, including family ties, employment, financial resources, community ties, drug or alcohol abuse history, and past conduct; and (4) the nature and seriousness of the danger to the

2

community or to an individual that would be posed by release.  See 18 U.S.C. § 3142(g).  In weighing these factors, "the presumption favoring detention does not disappear entirely, but remains a factor to be considered among those weighed by the district court."[1]  Mercedes, 254 F.3d at 436.

III.    The Defendant's Application Should Be Denied

As discussed below, weighing the factors in § 3142(g) shows that the defendant is both a danger to the community and a risk of flight, and the proposed bond conditions in the defendant's Application do not ameliorate these concerns or otherwise provide a basis for his release.

A.  The Defendant Presents a Danger to the Community

The government has identified substantial evidence showing that, on multiple occasions, the defendant instructed and paid minor victims to produce sexually explicit material. These minor victims include—but are not limited to—the two referenced in the superseding indictment, namely, John Doe #1, who was a teenage boy that participated in a youth basketball league that the defendant supervised, and John Doe #2, who was a teenage boy that the defendant communicated with through social media applications.  The defendant, therefore, poses a serious danger to the community, and the proposed bond conditions in his Application would fail to reasonably assure the community's safety.

The evidence against the defendant is strong and includes sexually explicit videos and related chat messages from the defendant's iPhone, as well as the defendant's own admissions to law enforcement that he identified and targeted minor victims.  For example, in a post-Miranda interview, the defendant explained to law enforcement that he knew John Doe #1, a 14-year-old boy, from the defendant's work as the commissioner of a youth basketball program run by a Catholic church in Brooklyn.  The defendant had targeted John Doe #1 after his co-defendant in this case, Anthony Cina, saw John Doe #1's profile on Instagram and asked the defendant to approach John Doe #1 about producing sexually explicit material.  The defendant told law enforcement that Cina agreed to pay John Doe #1 directly for sexually explicit videos by purchasing an electronic bike for the minor victim.  In addition to the defendant's statements, Snapchat messages with Cina found on the defendant's iPhone show the two co-defendants discussing how to solicit sexually explicit content from John Doe #1.  Specifically, in one Snapchat message, the defendant explained to Cina, "Here's what can happen, you can save everything they send me.  Like you used to.  And you and I can find a way to split paying the boys I take [John Doe #1] you take [another minor victim]."

Law enforcement also located a Snapchat group chat on the defendant's iPhone in which the defendant and Cina instructed John Doe #1 how to create sexually explicit videos for them.  In the group chat, John Doe #1 asked, "Anthony [i.e., co-defendant Cina] explain what I need to do," and Cina responded, "Let Mike [i.e., the defendant] give you a massage or

---

[1]      Evidentiary rules do not apply at detention hearings, and the government is entitled to present evidence by way of proffer, among other means.  See 18 U.S.C. § 3142(f)(2); see also United States v. LaFontaine, 210 F.3d 125, 130-31 (2d Cir. 2000).

something."  In the chat, the defendant and Cina also told John Doe #1 that they would buy him a bike in return for the videos.  Among other things, Cina explained to John Doe #1 that, "Yes the bike will be ordered and whatever extra if you let Mike actually give a good massage and not stop him" // "Just get a good ass massage don't fight anything strip to boxers on video lay on the table and just chill let Mike work his magic" // "You get hard who cares" // "Most likely going to happen cuz you don't often get touched like this."  Later in the same group chat, Cina wrote, "The video we talked about don't forget," to which the defendant responded, "Explain the video to him" // "So he doesn't forget."  Cina then wrote, "Stripping and playing with it before he showers?" to which John Doe #1 responded, "Kk."  Consistent with these Snapchat messages with John Doe #1, on the defendant's iPhone, law enforcement identified at least two videos of John Doe #1 engaging in sexually explicit conduct.  Further, there was at least one other video on the defendant's iPhone of the defendant giving John Doe #1 a massage while John Doe #1 was wearing boxers and no other clothing.  Based on metadata from the video and the interview with the defendant, it appears that this massage video was filmed in the basement of the church building where the defendant worked in connection with the youth basketball league.

As it relates to John Doe #2, in the defendant's interview with law enforcement, he admitted that he instructed and paid John Doe #2 to create sexually explicit content.  Similar to John Doe #1, the defendant told law enforcement that he paid John Doe #2 on behalf of his co-defendant, Cina, for the content.  The evidence shows that the defendant contacted John Doe #2 by sending messages through social media applications.  Law enforcement also has identified at least three videos that John Doe #2 sent to the defendant showing John Doe #2 engaged in sexually explicit conduct.

Ultimately, while the charged conduct in this case involves John Does #1 and #2, they are just two instances of the defendant targeting and sexually exploiting minor victims.  The government's investigation is ongoing and has revealed additional evidence showing that the defendant targeted and contacted other minor victims, including through social media messaging applications as well as other minors that were involved in the youth basketball league overseen by the defendant.

Given that the defendant solicited sexually explicit material from minor victims that he contacted over social media applications, but also from minor victims that he was entrusted to oversee as part of the youth basketball league—including hands-on contact with at least one minor victim—it is clear that the proposed bond conditions in the Application would not assure the safety of the community.  Under the proposed bond conditions, the defendant would reside with his parents where the defendant lived prior to his arrest and engaged in the offense conduct charged in this case.  Even if the defendant was placed on home incarceration, he would be residing at the same location where the defendant used social media applications to target minor victims for sexual exploitation, which does not reasonably assure the safety of the community.  See United States v. Zhang, No. 22-CR-208 (CBA), 2022 WL 17420740, at *5 (E.D.N.Y. Aug. 3, 2022) (rejecting proposal to allow the defendant to reside at his mother's home because the defendant "has not been reluctant in the past to use his mother's residence to conduct illegal actions" and therefore the "proposal does not offer much in the way of protecting the community").  In addition, the Application states that his mother and father could be third-party custodians who would ensure that he abides by his conditions of release.  But his Application makes clear that neither parent would be in a position to adequately supervise the

defendant, especially in light of the fact that his parents previously failed to prevent him from soliciting sexually explicit conduct from minors while living in their home. Further, as explained in the Application, the defendant's mother is about to undergo a serious medical procedure and suffers from Parkinson's disease. The defendant's father also works full-time and therefore would not be home for much of the day. Accordingly, there would be no meaningful supervision of the defendant even if the defendant was subject to home incarceration.[2]

Finally, in his Application, the defendant cites a series of prior cases where the defendant was released pretrial. See App. at 8-10. But the vast majority of the cited cases are distinguishable because they involved defendants that produced sexually explicit content by contacting victims over the internet, and not the "hands-on" child exploitation that the defendant in this case also engaged in. See e.g., United States v. Noel, No. 23-CR-320 (PKC), United States v. Cruz, No. 23-CR-159 (NRM), United States v. Deutsch, No. 18-CR-502 (FB), United States v. Labianca, No. 22-CR-206 (AMD); United States v. Garrett, No. 20-CR-561 (RPK); United States v. Didier, No. 20-CR-423 (JMA). In contrast, in cases where a defendant is charged with hands-on abuse of a minor, such as this one, the defendants were detained. See e.g., United States v. Terranova, No. 23-CR-516 (KAM); United States v. Burgos-Collazo, No. 20-CR-492 (PKC); see also United States v. Valerio, 9 F. Supp. 3d 283, 292 (E.D.N.Y. 2014) (denying pretrial release for a defendant alleged to have sexually abused children both physically and over the internet).

B. The Defendant Presents a Risk of Flight

The defendant also poses a risk of flight if released due to the significant prison time he faces upon conviction and the strength of the evidence against him. Counts One and Two of the superseding indictment each carry a 15-year mandatory minimum sentence. 18 U.S.C. § 2251(e). The Second Circuit has held that the possibility of a severe sentence is an important factor in assessing flight risk. See United States v. Jackson, 823 F.2d 4, 7 (2d Cir. 1987) (prospect of severe sentence creates incentive to flee); see also United States v. Cisneros, 328 F.3d 610, 618 (10th Cir. 2003) (defendant was a flight risk because her knowledge of the seriousness of the charges against her gave her a strong incentive to abscond); United States v. Townsend, 897 F.2d 989, 995 (9th Cir. 1990) ("Facing the much graver penalties possible under the present indictment, the defendants have an even greater incentive to consider flight."). Further, the government's evidence against the defendant is strong and includes, among other things, the defendant's admissions to law enforcement that he solicited sexually explicit material from minors, including minors involved in the youth basketball program that he oversaw. The government's evidence also includes the defendant's cell phone that contained sexually explicit material involving minors and the defendant's messages soliciting that material from the minor victims. The defendant's proposed bail package and release conditions are not sufficient to mitigate this risk of flight in the face of the lengthy mandatory minimum sentence and strong

---

[2]    The Application also is noticeably devoid of any proposed bond conditions that would limit the defendant's ability to access the internet or otherwise prevent him from targeting minor victims over social media. To be clear, even with such proposed conditions, the Application would still fail to reasonably assure the community's safety, however, the absence of such proposed conditions reveals that the Application fails to appreciate the full scope of the danger presented by the defendant's release.

5

evidence of the defendant's guilt.  The proposed use of home incarceration and electronic monitoring in lieu of detention is insufficient here, and "at best elaborately replicate[s] a detention facility without the confidence of security such a facility instills."  United States v. Orena, 986 F.2d 628, 632 (2d Cir. 1993); see United States v. Zarrab, 2016 WL 3681423, at *10 (S.D.N.Y. June 16, 2016).  The proposed bond conditions in the Application, therefore, do not reasonably assure the defendant's appearance as required.

    IV.    <u>Conclusion</u>

        For the foregoing reasons, the Court should deny the defendant's Application and the defendant should remain detained pending the resolution of this case.

Respectfully submitted,

JOSEPH NOCELLA, JR.
United States Attorney

By:      /s/            
          Matthew F. Sullivan
          Assistant U.S. Attorney
          (718) 254-6161

cc:    Clerk of Court (WFK) (by ECF and E-Mail)
      Samuel Jacobson, Esq. (by ECF and E-Mail)